Thank you. Mr. Shapiro, good morning. Good morning. Please, the court. My name is Jonathan Shapiro. I represent the defendant, James Patterson, on his appeal for his conviction in November of 2015 of five counts of bank robbery. The lynching of the government's claim that there was probable cause to believe that the installation of GPS tracking devices on two vehicles would lead to evidence of past and future bank robberies was based upon a demonstrably false statement in one of the applications. What evidence was used that was produced by that document that was used at trial against your client? The surveillance which resulted from the installation of the GPS tracking device resulted in the tracking of Mr. Patterson for a number of days, during which his observations were observed and the government alleged that they observed him going past banks, casing banks, stopping certain banks and so on. That evidence clearly was a result of the tracking devices. They observed independently of that, that the bank robber, all the bank robberies had dark glasses, had plastic gloves, that he was a black male. All of that didn't depend on anything that came out of that warrant. But that, to the extent that there was evidence of the various descriptions of the persons in warrant applications, those descriptions were completely common to virtually every bank robber. Every bank robber covers his head with a hat or a hood. They all wear glasses, dark glasses, and they all cover their faces and their bodies with clothing. And they all wear plastic gloves on their head? Yes. Really? The whole purpose of what they wear is to disguise themselves. And if you look at, for example, the FBI bank robbery warranted list, you'll see that virtually every picture looks identical in terms of the nature of the clothing that's worn. So, to the extent that there was anything in the warrant, and there was very little concerning the description, the description of the alleged robbery and two of the bank robberies as contained in the warrant was simply there was a black male. With respect to one of the other robberies, there was no description of race or anything concerning the physical characteristics. And the other physical characteristics contained in the warrant were not in any way specific and, in fact, were contradictory. I don't think I'm following your answer to Judge Terway. So, everything you're saying is just challenging how significant the evidence that was obtained, potentially independent of the tracking, was. But the question is, what evidence are you saying was obtained because of the tracking that was relevant to the probable cause to arrest and used as relevant to the probable cause to arrest? At trial, there was a lot of evidence introduced concerning the tracking of the defendant in a number of days prior to the day of his arrest. That evidence, which was significant and... Well, I don't understand. What is that? Well, they tracked the defendant. They allegedly observed him driving by encasing banks in a number of different communities over the course of several days. Okay, and that's the evidence that you want suppressed? That's part of it. And what you don't... The other evidence is the evidence concerning his arrest. The observations made at the time of his arrest... Because the only way they could have known to be at the arrest was through the casing? That... Was there a tip or anything that was called in? I can't remember. There was no tip. No evidence. So they were just there because, on your representation, it must have been because they were casing him through the tracker. In fact, the Warren application explains the need for the tracking device. And at the motion to suppress stage, did the government argue at that time that there was nothing to suppress because they were not dependent on the tracking? No. That's an argument that they raised for the first time. For the first time here. So when they say there's no record developed on the GPS having been used for the tracking, that's a part because it wasn't contested below. That was not. Everybody, for the purpose of the hearing and the arguments, assumed that the tracking device had an impact. And the government's argument now in appeal that the defendant somehow waived that right. In fact, the government waived its right to waive that argument by failing to raise it below. Speaking about the trial and suppression, you're not seeking to suppress the testimony of the co-defendant or the co-conspirator, as it's called. No. And he testified against your client. Sure. His girlfriend testified. And essentially, her testimony was the only evidence really that implicated him in the crime. Well, what does that do to your client's case? No question that was significant, but her testimony was in many ways suspect. Well, is that something for the jury? The suspicion that you have about her testimony, is that something that is an argument to be made before the jury, not before us? But our point is that the other evidence that was that was obtained as a result of the tracking, including the evidence of the observations made at the time of his arrest, was incredibly important in identifying him. My point is, maybe I wasn't clear, and I apologize. My point is, does all this argument make any difference, considering that there is evidence from someone directly implicating your client, which apparently the jury could have believed and found his guilt on that evidence alone? What are you saying was problematic about her testimony? Well, there were numerous inconsistencies concerning her testimony. There was also a very significant interest on her part in testifying against him, because she was essentially getting a free pass. She testified against him, and as a result of that, she was getting a very significant and did get a very significant deal from the government. But what Judge DeGioia was saying is the jury heard that and made a credibility determination. True. But the evidence that came as a result of the tracking, that was significant and had a bearing on whether It corroborated to a certain extent her testimony, that he was involved in encasing bags, in robbing bags. Is your argument that there is an error of a constitutional dimension, by virtue of what you contend was the tracking without proper cause? Yes. And as a consequence, even if the evidence was sufficient to convict, it was not of a kind that was so overwhelming as to make the constitutional error harmless? And the government, of course, has a burden of proving an absence or lack of prejudice in a case where there is a constitutional violation beyond a reasonable doubt. And we don't think they can do that in these circumstances. But here, if we add in the testimony against your client from a person who is directly involved in it, plus, was there evidence in the record of the observations by the witnesses about various Volvos being found near banks? Was that in the record at trial? There was testimony, but that testimony... But then you would have, independent of what she said, you would have neutral people corroborating what she said. That evidence could not be said to corroborate her testimony. What there was... Why wouldn't it be corroborated? There were witnesses who said that, for example, there was surveillance video that showed a vehicle that could have been a Volvo in the vicinity of one of the banks. But there was no evidence that the suspect got in or out of that car, and it was complete speculation. But didn't she... Was her testimony that he was at that bank performing that robbery? Yes, right. There's no question that her testimony... Yes, I'm just saying you have what corroborates that. She contends he was at that bank committing that robbery in a Volvo. Then you have, independent of her, neutral evidence that a Volvo was there at the time the robbery occurred. So that's pretty helpful, isn't it? No question it was helpful. So it's a matter of how helpful did it have to be in order to solve the constitutional problem? Does it show an absence of prejudice beyond the legal endowment? I don't think so. How about the license plate? Well, the license plate, and that of course was key to the warrant application. The license plate had nothing to do with any of the bank robberies. The license plate was observed on the Volvo, which was allegedly connected to one of the robberies. No, that was the false part of the application. The warrant application contained a statement by the affiant that a black Volvo with a license plate 353PY1 was seen in the area of the North Shore bank robbery. That was false. That license plate number and that alleged black Volvo was not identified with any of the robberies. I was under the impression that several people had seen Volvo, some called it black, some called it dark green, in the vicinity of some of those robberies. The North Shore bank robbery, there was a witness who claimed to see a green Volvo without a license plate and was unable to identify any license plate with respect to the North Shore bank robbery. But the affiant nevertheless claimed that the 353PY1 license plate, which was of course the key to identifying the car that was later identified to a defendant, and that was not true. Someone identified the plate, not at a robbery scene, but as a person who was appearing suspicious near the bank. Isn't that correct? There was a report by a person who observed a suspicious person in Peabody shortly before the North Shore bank robbery and that person was identified as getting out of the 353PY1 Volvo. That was in Peabody, that was miles away and that was a different time and nothing connected that case, that incident, with any robbery. Nothing except it was very close to where a robbery took place thereafter. Close in time and geographically about three miles away. Four miles, but nevertheless there was nothing in the prior incident which indicated that that person was involved in any bank robbery. But just so I understand, put aside whether there's a problem with the affidavit and therefore the warrant to get the tracking, at trial was there evidence of a Volvo having this license plate introduced? Yes. And did the evidence also then get introduced that that license plate traced to this person? There was evidence that as a result of the... You didn't need a warrant to run the license plate, did you? No, you needed a warrant to track the Volvo. Right, so put aside the tracking. The evidence at trial would have showed that there was a Volvo with this license plate that this license plate traced to this person and that that Volvo was seen four miles from the bank that was robbed at another bank that was robbed in this time period not that far from it and then you have a person who was in on it, supposedly, testifying that this is the guy who did it. So why wouldn't that be overwhelming evidence? This suspect, Mr. Patterson, was never identified as being in that Volvo. Except by his girlfriend. Except by his girlfriend, but in terms of the warrant, he was an unknown suspect.  Thank you, General. Ms. DeVincentis, good morning. Good morning, Your Honors. May it please the Court, Alexia DeVincentis on behalf of the United States. To pick up where Your Honors left off with the issue of the GPS tracking warrants, I'm, of course, happy to discuss the merits of the District Court's denial of the request for a Frank's hearing. And the denial of the motion to suppress. But the simple fact is that whether viewed as a matter of appellate waiver or instead as a matter of harmless error, Patterson's claims fail because he has not and cannot identify any evidence acquired by virtue of the GPS trackers that was used against him. Well, he just told us that evidence was introduced that the GPS tracking showed him casing banks. Is that true or not? Your Honor, it's not. Mr. Shapiro has represented, I believe the words were, that the GPS resulted in tracking of Patterson for various days. But the surveillance reports submitted in connection with his motion to suppress refer invariably to physical reconnaissance, describing how officers stationed themselves outside of 9 Dark Lane and followed the Acura from there. And while Patterson certainly was not required to renew his motion to suppress after trial, he could have done so. And that he did not, I would suggest, was because there was no further record to develop in this regard. Patterson did submit. But see, the government didn't argue when he moved to suppress that there was no reason to entertain the motion since none of the evidence he was seeking to suppress would be used. That's correct, Your Honor. That argument was not made below. So what would have led him to think that the GPS was not being used for the casing? Well, Your Honor, I believe it's at docket number 57. You can see that Patterson did, subsequent to the motion to suppress hearing, submit a request for any of the data that was generated by virtue of the GPS tracking devices. And yet we see at trial that there was no introduction of evidence, even on cross-examination, that would suggest that there was... What was the response he got to that request? The response, Your Honor, was that there was no such evidence to provide. The government did request the ability to use the GPS tracking. But ultimately, in this case, good old-fashioned surveillance did the trick. And so the GPS devices simply were never relied upon. And you're saying that there was no evidence introduced at all about his GPS whereabouts? None whatsoever. Just like with respect to the FBI surveillance reports that were submitted in connection with the motion to suppress, all of the discussion at trial regarding the tracking, and, yes, there was ample evidence regarding the tracking, it referred, once again, to physical reconnaissance. These officers simply stationed themselves outside of the residence and followed... Does the record show that the GPS tracker was used? It does not, Your Honor. There's no suggestion in the record that the GPS was relied upon. That's not what I said. Was it used? Was it on? I believe that the record suggests that it was installed. Whether or not it was actually activated, the record is silent in that regard. So the police didn't know where he was because of the GPS. They knew where he was because once they located the vehicle and the residence, they simply followed him? Yes, Your Honor. And in that regard, I refer the court specifically to pages, I believe it's 100 to 110 in the appendix, which are the FBI surveillance reports that were submitted in connection with the motion to suppress. They refer to conducting surveillance in the area of 9 Dark Lane, conducting physical surveillance beginning in and around 9 Dark Lane. What's inconsistent with that? I use my GPS to get to my son's school, and I know how to get there without it. But, you know, sometimes just to be safe, you have it on. So I'm just trying to understand what the government's actual position is. Is your actual position that the record simply doesn't show one way or the other, or is your position that the record shows it was not used? The record shows it doesn't show one way or another. So you're not representing to us that, in fact, it was not used? I can tell Your Honor that it was not used, but limiting myself to the four corners of the record, I think there's simply an absence of evidence that it was used. And given the fact that Patterson can't point to anything that actually flowed from the GPS data, again, his claim... Well, I thought his argument would be, it's much easier to case if I have the GPS to rely on than if I don't, which has got to be true. I don't doubt that that's true, but again... So then if it's just silent on this point, the question is sort of whose fault is it that it's silent? Is it his fault because he didn't develop the record that it was used, or is it the government's fault because they never disputed that it was going to be used for the casing? Again, Your Honor, the government did not dispute that fact below, but Patterson did have the opportunity to develop the record in that regard and chose not to avail himself of that opportunity. And I would submit that he simply doesn't get the benefit of a record that he never created. And so we're in this position that, yes, there were GPS trackers installed, but there's no evidence that they were ever used. And was that evidence introduced at trial, that the trackers were installed? I don't believe that it was, Your Honor, no. So the jury would have had no idea that there was a GPS device on his vehicle? That's correct, Your Honor. On what day did you install the GPS? I believe... I would have to look back to the record in that regard, Your Honor. I think it was the day or the day after. Was it before or after they located his house? After, as is made clear from the affidavit submitted in support of the search warrant. And how did you locate his house? The house was located because it was the address to which the particular license plate was registered, the license plate that was observed in relation to the Peabody incident. And you have just, I believe, stated that that's when you started following him in surveillance? Once you knew where he was residing? That's correct, Your Honor. On the day that the Peabody incident was reported and there was a license plate identified, the officers got the information regarding where the address of the license registration was, went to that address, saw that the license plate had been removed from the vehicle. And then I think you can see from the affidavit itself that the very next day, the officers were back there again, and that's when they observed the license plate. The car, the Volvo, being operated first by Don Spurr, and then that license plate being removed and reattached to the Acura for which the second warrant was filed. I take it that the officers kept surveillance logs? Yes, Your Honor. Those are in the appendix. They're in the appendix? Yes, Your Honor. Yes. And those are the surveillance logs to which I was referring earlier, which, again, invariably refer to physical surveillance. Am I right in reading the affidavit, I take the points you're making, in reading the affidavit that if I strike from the affidavit, and I understand the government's vision that we don't need to strike it because it wasn't just a negligent mistake. If I strike from the affidavit the false reference to the license plate being attached to the black Volvo outside the Salem Bank, that there will be no other basis in the warrant affidavit for concluding that that license plate number is in any way related to the defendant. Is that right? Your Honor, if you struck the statement altogether, struck the reference to the license plate number altogether, then I think we would be hard-pressed to argue that there was some sort of linkage. So your position, assuming that it was an intentional, reckless mistake, your position is that under the Frank's analysis, we're supposed to imagine that the license plate number is somewhere else in the affidavit, even though it's not? Yes, Your Honor, the government's position is that you have to correct the misstatement. Now, admittedly, there are... But I don't know of any authority that suggests that we can rewrite it to add information to it that's not otherwise there once you delete the false information because I don't understand why under good faith there'd be any reason to then credit the reliance on the warrant because on the face of the affidavit, nothing in it that's true would support the conclusion. You'd just be imagining a new affidavit that doesn't exist. Well, Your Honor, there are, of course, various cases that refer to excising a false statement or setting that statement aside, including in Frank's itself. But those cases nearly always involve what is a wholesale fabrication. So in Frank's, for example, there was a statement included in the affidavit that the affiant had verified with people who worked with the suspect his usual method of dress. Here we're dealing with something very different. The statement that in this incident there was observed a particular license plate, that statement isn't per se false. It's false. The magistrate won't know that. I'm sorry, Your Honor? The magistrate won't know. All the magistrate knows is what's before him. And in the affidavit it says there's a license plate attached to a black Volvo outside the bank. That turns out not to be true. So the magistrate doesn't know that there's a green Volvo at a different bank that had that license plate. So what sense does it say that therefore we should just imagine that the magistrate's crediting of the affidavit provides a good faith basis for the officer to rely on if the officer intentionally gave, not saying he did, but intentionally gave the wrong information? I still don't understand how that would make any sense. Well, Your Honor, the magistrate wouldn't know that, but the district court who is analyzing a request for a Frank's hearing would. The district court here had before it the whole of the affiant. But he's trying to figure out whether there was good faith reliance on the warrant. And doesn't that have to be looked at from the perspective of the magistrate who issued the warrant? I believe under the Frank's... I understand the district court is evaluating whether to have a hearing, but the hearing is on whether the officer could in good faith rely on the warrant. Correct, Your Honor. So from the perspective of that question, what in the warrant would provide good faith basis for reliance if we imagine the only reference to the license plate was intentionally put in there falsely? Nothing, right? Again, we would be left without the license plate number. But returning to Your Honor's question about excision versus correction, I think if we look at the rationale behind what the court is doing when in the case of an intentionally false misstatement it removes that statement, or in the case of an omission it adds the statement in, I think what the court is trying to do is to put the government in the position that it would have been in but for the misstatement. Just as we see in the context, for example, of inevitable discovery. And I think that in order to put the government in the position that it would have been in but for the misstatement here... But then you would just say in any case that all the other good evidence that they had that they didn't bring before the magistrate should always be allowed in to correct the false affidavit. And there's no evidence for that. I don't think you have to go that far, Your Honor. I think it's simply a matter of correcting the information that the affidavit did choose to provide. Is there a case, any case you have that supports this proposition? Because the only one I saw is a case in which it dealt with an omission. And I don't know of a case that allows you to put in evidence that's just nowhere in the warrant affidavit and include it. See, that's favorable to the government. Is there one? To just push back a bit on that, Your Honor, I'm not asking that the court take information outside of the warrant and add that back in. No, I'm asking that the court correct the placement of the statement. And to your question as to whether or not... If you strike the false statement, we just agreed there's nothing else in the warrant that shows where that license plate number comes from or why anyone's interested in it. So you want to put in information not in the warrant affidavit, which is something about where that license plate number comes from. And I'm just asking, is there any authority that suggests under Frank's the government is entitled to do that? Concedingly, Your Honor, looking for an analogous circumstance is a bit like looking for a needle in a haystack. I would refer the court, though, to its 1989 decision in United States v. Young where Justice Breyer, writing for the court, stated that the proper technique is, I'm quoting here, to excise or otherwise appropriately adjust all misleading statements from the affidavit. And in applying that statement there, mind you, this was with a minor detail in the affidavit, but what the court did was look at whether the statement as corrected would still support the probable cause determination, not the excision of that statement. I was under the impression that there's a rule that you can only look at the four corners of the affidavit in determining whether to suppress or not. Is that rule been changed? Well, Your Honor, if we're talking about a facial challenge, yes, that would be the case. But, again, we're in the Franks context and there is more, the district court does have available to it more than the four corners of the affidavit. The defendant has a burden to put forth affirmative evidence and here that evidence came in the form of these surveillance reports which supported the district court's ultimate determination, first, that the statement wasn't intentional or reckless, but, secondly, that a reformed affidavit would still result in finding a probable cause. But appropriately adjust can't mean add information that's not there. Appropriately adjust in that context can't mean add information that's not there. Appropriately adjust must mean that when the information is excised then you take a look to the appropriately adjusted affidavit to see what's left. Respectfully, Your Honor, I would disagree. Looking at, again, the rationale behind excising fabricated statements or adding back in materially omitted information that's material, I think that was the government's... That doesn't make any sense. The magistrate judge has to evaluate the issuance of a warrant based on what's before him or her. Before her. Yes, but, again, we're not before the magistrate judge. We're before the district court on a motion for a hearing. What's the district court trying to figure out? In the case of a Franks hearing request, the district court is trying to determine... If I may. You may finish. The district court is trying to determine whether the defendant has set aside the two-pronged test for being entitled to a Franks hearing specifically, whether or not... And why? And the reason is to figure out whether the officer could rely in good faith on a warrant notwithstanding the mistaken information in the warrant. And that has to be an inquiry into whether the fact that the warrant was issued by the magistrate provides a good faith basis for the officer doing it, which means what matters is what the magistrate knew. Otherwise, there's no reason to think that the officer should have been relying on the warrant. You're just saying that the officer should have relied on what he knew, which is that there was a license plate out there that tied to a different car. But that doesn't have anything to do with the warrant. The magistrate issues the warrant. And the magistrate has no idea whether or not there is some other car that has this license plate. Again, Your Honor, I would simply restate that in the context of a Franks hearing, I don't believe you would be limited to the four corners of the affidavit. And I would just also remind this Court that for the reasons stated at the outset, it needed to reach this issue. Thank you. Thank you.